IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

SARAH DODD,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C13-0108

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . 2

III.  PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . 2

IV.  FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    A.   Dodd's Education and Employment Background . . . . . . . . . . . . . . 4
    B.   Administrative Hearing Testimony . . . . . . . . . . . . . . . . . . 4
        1.   Dodd's Testimony . . . . . . . . . . . . . . . . . . . . . . . . 4
        2.   Vocational Expert's Testimony . . . . . . . . . . . . . . . . . . 5
    C.   Dodd's Medical History . . . . . . . . . . . . . . . . . . . . . . . . 6

V.   CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . 10
    A.   ALJ's Disability Determination . . . . . . . . . . . . . . . . . . 10
    B.   Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . 12
        1.   RFC Assessment . . . . . . . . . . . . . . . . . . . . . . . . 13
        2.   Credibility Determination . . . . . . . . . . . . . . . . . . . 16

VI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

VII. ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 2) filed by Plaintiff Sarah Dodd on October 16, 2013, requesting judicial review of the Social Security Commissioner's decision to deny her applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Dodd asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits and SSI benefits. In the alternative, Dodd requests the Court to remand this matter for further proceedings.

# II. PROCEDURAL BACKGROUND

On October 16, 2013, Dodd filed this action for judicial review. The Commissioner filed an Answer on December 23, 2013. On January 23, 2014, Dodd filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that she is functionally capable of performing work that exists in significant numbers in the national economy. On March 24, 2014, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On April 3, 2014, Dodd filed a reply brief. On November 15, 2013, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

# III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the

Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal."

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549

(8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Dodd's Education and Employment Background

Dodd was born in 1971. She earned a B.A. in interior design from Michigan State University. Following college, Dodd worked at an architecture firm in Chicago, Illinois, and later at an architecture firm in Cedar Rapids, Iowa.

### B. Administrative Hearing Testimony

#### 1. Dodd's Testimony

At the administrative hearing, Dodd testified that she had to stop working because she could not complete a full eight-hour workday due to colitis, and "having constant diarrhea and having to run to the bathroom, . . . a lot for gas and cramping and fatigue

4

because I wasn't sleeping at night."[1] At its worst, Dodd stated that she had up to 16 bowel movements in a single day. Dodd also indicated that her sleeping problems were due, in part, to needing to use the bathroom periodically throughout the night.

Dodd also testified she suffers from migraine headaches once or twice each month. She reported that the migraines can last all day, but generally last 10 hours. Dodd stated that migraines significantly limit her activities because she "pretty much" stays in bed. Dodd also suffers from depression and anxiety. She testified that "it's obviously really hard to be not working, and it takes a toll on your self-esteem, and also just kind of the embarrassment that's involved with the colitis and dealing with those issues."[2]

### 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Roger Marquardt with a hypothetical for an individual who is limited to:

> Lift and/or carry occasionally 20 pounds, frequently 10; stand
> and walk with normal breaks for a total of about two hours in
> an eight-hour workday; sit with normal breaks for a total of six
> hours in an eight-hour workday; occasionally climbing ramps,
> stairs, balancing, stooping, crouching, never climbing ladders,
> ropes, scaffolds, never crawling; avoid concentrated exposure
> to vibrations and hazards, machinery, [and] heights[.]

(Administrative Record at 59-60.) The vocational expert testified that under such limitations, Dodd could perform the following jobs: (1) hotel manager (500 positions in Iowa and 32,400 positions in the nation), (2) supervisor of order takers (700 positions in Iowa and 50,000 positions in the nation), (3) drapery and upholstery estimator (400 positions in Iowa and 61,000 positions in the nation). Next, the ALJ inquired whether Dodd was capable of employment under the following hypothetical which was identical to

---

[1] Administrative Record at 47.

[2] *Id.* at 53.

5

the first hypothetical except "[n]o production rate pace of work -- no production rate pace work, but rather goal oriented work; [and] no more than occasional need for attention to detail."[3] Based on that hypothetical, the vocational expert testified that Dodd could perform the following jobs: (1) information clerk (400 positions in Iowa and 65,000 positions in the nation), (2) addresser (675 positions in Iowa and 72,000 positions in the nation), and (3) order clerk (2,000 positions in Iowa and 240,000 positions in the nation). Finally, the ALJ asked whether considering the limitations in the first two hypotheticals, plus a limitation of being off-task for one-third of a workday would allow for employment. The vocational expert testified that under such limitations, competitive work would be precluded.

### C. Dodd's Medical History

On March 31, 2008, Dodd met with Dr. T.F. Mangan, M.D., at the Mayo Clinic in Rochester, Minnesota. Dodd's chief complaint was colitis. In reviewing Dodd's medical history, Dr. Mangan noted that Dodd developed crampy abdominal pain and diarrhea in September 2006, during a time of emotional stress. She was successfully treated for her symptoms. In August 2007, her symptoms returned, but were worse. A colonoscopic biopsy revealed microscopic colitis. "Presently, she is having five stools per day, one at night. . . . She will have abdominal cramping when she needs to defecate, and this resolves with defecation."[4] Her local physician treated her with medication, but she stopped taking the medication prior to meeting with Dr. Mangan. Upon examination,

---

[3] Administrative Record at 61-62.

[4] Administrative Record at 362.

Dr. Mangan diagnosed Dodd with collagenous colitis.[5] Dr. Mangan recommended medication as treatment.

On January 25, 2009, Dodd was referred to Dr. Thomas W. Hansen, M.D., for a psychiatric evaluation.[6] In reviewing her medical history, Dr. Hansen noted that:

> In 2007, [Dodd] was diagnosed with collagenous colitis. She said it took a form of a lot of diarrhea, upset stomach, and misery. She was always on the look out for where a bathroom was. She said it interfered with her work. She would sometime miss weeks [of work.]

(Administrative Record at 394.) Dr. Hansen further noted that Dodd quit her job in January 2009, and has been "doing very well, but she is not facing the stress of work."[7] At the time of her meeting with Dr. Hansen, she was "still not having [as] much energy as she should, still tearful at times, feeling a little frustrated that it is time for her to get on with her personal life, time for her to get back to work, and she has been feeling frustrated and stuck with the illness and lack of employment for the last year."[8] She had also taken medication for depression in the past. Upon examination, Dr. Hansen diagnosed Dodd with recurrent depression with possible underlying anxiety disorder. Dr. Hansen recommended medication and psychotherapy as treatment.

---

[5] Collagenous colitis is an inflammation of the colon with an unknown etiology, characterized by deposits of collagenous material. Symptoms include cramping and abdominal pain leading to watery diarrhea. Collagenous colitis. (2007). Collagenous colitis is an inflammation of the colon with an unknown etiology, characterized by deposits of collagenous material. Symptoms include cramping and abdominal pain leading to watery diarrhea. *Dorland's Illustrated Medical Dictionary* 390 (31st ed. 2007).

[6] Dodd continued treatment with Dr. Hansen following her initial evaluation.

[7] Administrative Record at 395.

[8] Administrative Record at 395.

On January 4, 2011, Dr. Tracey Larrison, D.O., reviewed Dodd's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Dodd. Dr. Larrison determined that Dodd could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for at least two hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Larrison opined that "[d]ue to fatigue associated with her diarrhea and especially the day afterwards, as well as medication side effects of fatigue, [Dodd] would likely not be able to sustain more than sedentary work."[9] Dr. Larrison also determined that Dodd could occasionally climb ramps and stairs, balance, stoop, and crouch; but never kneel or crawl. Dr. Larrison further opined that Dodd should avoid concentrated exposure to vibrations and hazards, such as machinery and heights. Dr. Larrison found no manipulative, visual, or communicative limitations. Dr. Larrison concluded that:

> [Dodd] has chronic diarrhea with some cramping and fatigue with exacerbations (usually 6-8 per day) and remissions. She has never lost weight and has gained weight at times in the [medical evidence of record]. Facts of the file support [t]he conclusion that [Dodd] is maximally capable of activities as outlined in this RFC.

(Administrative Record at 408.)

On January 24, 2011, Dr. Sandra Davis, Ph.D., reviewed Dodd's medical records and provided DDS with a Psychiatric Review Technique assessment for Dodd. Dr. Davis diagnosed Dodd with recurrent depression with underlying anxiety disorder. Dr. Davis determined that Dodd had the following limitations: mild restriction of activities of daily

---

[9] Id. at 402.

8

living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. Dr. Davis concluded that:

> [Dodd's] primary limitations seem to be due to her colitis. At times she is symptomatic with colitis, her attention and concentration will be diminished and she restricts her travel outside her home. No other limitations of a mental health nature were reported. Overall, the mental components have been nonsevere, with GAF's ranging from 65 up.

(Administrative Record at 421.)

Also in January 2011, Ann E. Dunnigan, LISW, MSW, Dodd's treating counselor, provided DDS with a letter discussing her treatment of Dodd for depression and anxiety. Dunnigan noted that Dodd's symptoms were related primarily to her physical illness. Dunnigan noted that Dodd's symptoms included: severe sleep disturbance, nightmares, waking in tears, decreased energy and ability to feel pleasure, increased tearfulness, irritability, withdrawal, feelings of sadness, guilt, and hopelessness, and anxiety with breathing difficulties and light headedness. Dunnigan also indicated that Dodd had problems with attention, concentration, and focus. Dunnigan opined that "[t]he unpredictability, intensity and nature of her symptoms (gas, diarrhea, nausea, frequent trips to the bathroom, cramping, accidents, etc.) are very embarrassing and the shame of all this (plus not working) has caused her to isolate herself from everyone but immediate family."[10] Dunnigan indicated that Dodd is unable to leave her home at least 3 out of 5 days. In conclusion, Dunnigan opined that:

> [a]side from problems with focus and concentration, I do not think [Dodd] has problems with her mental functioning. She would certainly interact appropriately with others in the workplace. . . . I think absenteeism would be a huge problem

---

[10] Administrative Record at 451.

> and that [Dodd] would be unable to commit to any employer for even part-time work because of it.

(Administrative Record at 452.)

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Dodd is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least

> 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Dodd had not engaged in substantial gainful activity since December 31, 2007. At the second step, the ALJ concluded from the medical evidence that Dodd has the following severe impairment: collagenous colitis. At the third step, the ALJ found that Dodd did not have an impairment

or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Dodd's RFC as follows:

> [Dodd] has the residual functional capacity to perform light work . . . involving lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and walking with normal breaks for a total of 2 hours in an 8 hour day; sitting with normal breaks for a total of 6 hours in an 8 hour day; occasionally climbing ramps and stairs; occasionally balancing, stooping, and crouching; never climbing ladders, ropes, or scaffolds; never kneeling; never crawling; and avoiding concentrated exposure to vibrations and hazards such as unprotected heights or dangerous machinery. The individual is limited to working in an area where there is access to a bathroom; for instance, work should not require driving from one point to another. There should be no production rate pace requirements, but rather goal-oriented work involving no more than an occasional need for close attention to detail.

(Administrative Record at 20.) Also at the fourth step, the ALJ determined that Dodd was unable to perform any of her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Dodd could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Dodd was not disabled.

### B. Objections Raised By Claimant

Dodd argues that the ALJ erred in two respects. First, Dodd argues that the ALJ's RFC assessment is not supported by substantial evidence, including a full consideration of the medical evidence, proper consideration of the nature of her impairment, and proper consideration of the severity of her mental health impairments. Second, Dodd argues that the ALJ failed to properly evaluate her subjective allegations of disability.

## 1. RFC Assessment

Dodd argues that the ALJ's RFC assessment is not supported by substantial evidence. Specifically, Dodd argues that the ALJ failed to: (1) fully and fairly consider the medical evidence of record, (2) fully appreciate and properly consider the "waxing and waning" nature of her colitis when determining her RFC, and (3) properly determine the severity of her mental impairments. Dodd concludes that this matter should be remanded for further consideration of her RFC.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'"

*Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In determining Dodd's RFC, the ALJ thoroughly addressed and considered her medical history, particularly the opinions of various treating, examining, and non-examining doctors and other sources.[11] The ALJ also properly considered the "waxing and waning" nature of Dodd's colitis when determining her RFC. For example, in his RFC determination, the ALJ included a requirement that Dodd work in an area with access to a bathroom, and not work at a job requiring driving from one point to another.[12] The ALJ also thoroughly addressed Dodd's mental impairments and properly determined that they were not severe.[13] For example, in weighing Dodd's treating psychiatrist, Dr. Hansen, and treating counselor, Ann Dunnigan, the ALJ noted that "little weight is given to the opinions as the sources appeared to provide an opinion outside the area of their expertise. The opinions were primarily based on physical symptoms[.]"[14] Similarly, when addressing Dr. Hansen's treatment history, the ALJ noted that Dr. Hansen opined

---

[11] *See* Administrative Record at 21-26 (discussing and weighing the opinions of Dr. Abramson, Dr. Altman, Dr. Schindler, Bryan Gall (a nurse practitioner), Cathy McDonald (a vocational coordinator), Dr. Mangan, Dr. Booth, Dr. Hansen, Dr. Freedman, and Ann Dunnigan (a psychological counselor)).

[12] *See* Administrative Record at 20.

[13] *Id.* at 24-26 (discussing Dodd's mental health medical history).

[14] *Id.* at 26.

that Dodd was unable to work "primarily due to physical reasons," not due to depression or anxiety.[15] Moreover, in addressing Dunnigan's treatment of Dodd, the ALJ quoted an opinion from Dunnigan that "'aside from problems with focus and concentration, I do not think [Dodd] has problems with her mental functioning.'"[16] Finally, in making his RFC determination, the ALJ concluded that:

> no one doubts [Dodd] experiences some limitations; however, the above residual functional capacity assessment is supported by objective medical evidence, medical opinions when afforded appropriate weight, and [Dodd's] subjective complaints during the relevant period when taken in proper context. In view of all of the factors discussed above, the limitations on [Dodd's] capacities which were described earlier in this decision are considered warranted, but no greater or additional limitations are justified.

(Administrative Record at 26.)

Therefore, having reviewed the entire record, the Court finds that the ALJ properly considered Dodd's medical records, observations of treating physicians, and Dodd's own description of her limitations in making the ALJ's RFC assessment for Dodd.[17] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. The Court concludes that Dodd's assertion that the ALJ's RFC assessment is not supported by substantial evidence is without merit.

---

[15] *See* Administrative Record at 24.

[16] *Id.*

[17] *See id.* at 21-26 (providing thorough discussion of the relevant evidence for making a proper RFC determination).

## 2. Credibility Determination

Dodd argues that the ALJ failed to properly evaluate her subjective allegations of disability. Dodd maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Dodd's testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski

factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ determined that:

> After careful consideration of the evidence, the undersigned finds that [Dodd's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Dodd's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible. The record reflects several inconsistencies relevant to the issue of disability. While [Dodd] alleged symptoms of colitis including diarrhea, nausea, cramping, and fatigue, the condition never required inpatient hospitalization. [Dodd] testified she experienced difficulty eating and keeping food down; yet, evidence of record revealed no significant weight loss with the exception of a period of time in 2010 when [her] weight dropped to 168 pounds. Yet, subsequent progress notes showed a return to stable range between 176 pounds and

185 pounds. As previously discussed, [Dodd's] mother indicated her daughter was unable to travel or make plans; yet, it is emphasized [she] traveled to Chicago to visit family during the holiday season and traveled to Mayo Clinic for appointments. [Dodd's] father indicated his daughter was bedridden during much of the day. However, [Dodd] testified she attempted to limit her sleeping during the day in order to sleep at night. At one point or another in the record, either in forms completed in connection with the application, in medical records, or in testimony, [Dodd] reported caring for her personal needs, caring for a pet, beginning an exercise program in December 2009, traveling to Chicago during holidays, preparing meals, performing household chores, shopping at Kmart, reading, and using a computer. The activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. There is evidence [Dodd] was not compliant in taking prescribed medications, suggesting symptoms may not have been as limiting as alleged. [Dodd] admitted to certain abilities which provides support for part of the residual functional capacity conclusion in this decision. For these reasons, the undersigned finds [Dodd] has been less than credible regarding her allegation of total disability.

(Administrative Record at 24-25.)

It is clear from the ALJ's decision that he thoroughly considered and discussed Dodd's treatment history, medical history, functional restrictions, effectiveness of medications, and activities of daily living in making his credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Dodd's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not

required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Dodd's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## VI. CONCLUSION

The Court finds that the ALJ considered the medical evidence as a whole, and made a proper RFC determination based on a fully and fairly developed record. The Court also finds that the ALJ properly determined Dodd's credibility with regard to her subjective complaints of disability. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 2) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 24th day of July, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA